UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUNTER SEVERINI,

                Plaintiff,

– against –

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,

                Defendant.

**OPINION & ORDER**

18CV2775 (ER)

Ramos, D.J.:

Hunter Severini ("Severini") brings this action *pro se*, pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), against the Pennsylvania Higher Education Assistance Agency ("PHEAA"), claiming PHEAA did not conduct a reasonable investigation into his credit disputes. Severini has a student loan account with PHEAA, co-signed by his father, and missed various loan payments that he allegedly believed were suspended while his forbearance applications were pending. PHEAA reported the missed payments to credit bureaus which allegedly lowered Severini's and his father's credit score. Doc. 6. Severini initially filed suit in the New York County Civil Court of the State of New York and PHEAA removed it to this Court. Doc. 1. PHEAA now moves for summary judgment. For the reasons set forth below, the motion for summary judgment is GRANTED.

I.     **FACTUAL BACKROUND**

In July 2007, Severini obtained a $30,000 private loan to fund his undergraduate studies from a financial services company, MyRichUncle. Doc. 19, 2. Severini's father, Walter Henry Severini, is his co-signer. Doc. 6, 8. PHEAA is a loan service provider responsible for collecting payments, responding to customer service inquiries, and performing other administrative tasks

associated with maintaining student loan accounts. Doc. 19, 1. PHEAA has been the loan service provider for Severini's account since its inception. *Id.* at 2.

On April 30, 2015, Severini applied to PHEAA for an economic hardship forbearance as he was unable to find full-time employment. Doc. 6, 8. An economic hardship forbearance is available to borrowers who have monthly student loan payments greater than or equal to 20% of their monthly gross income. Doc, 19, 2. The forbearance application requires documentary proof of the applicant's most recent monthly gross income. *Id.*

Severini alleges that a forbearance request triggers a grace period during which no payments are due while the request is under consideration. Doc. 6, 8. However, PHEAA states that the "submission of a forbearance application does not relieve an applicant of their monthly obligation." Doc. 19, 2. Consistent with PHEAA's policy, the forbearance application form expressly states it is necessary to "continue making your regular monthly payments until the Forbearance has been approved." *Id.* The forbearance application further states that the applicant would receive written notice of approval or denial once the request was processed. *Id.*

On May 7, 2015, a week after he submitted his forbearance application, PHEAA notified Severini that his request was denied because the proof of income he provided—printouts of payment statements from Uber and Caviar, the food delivery service—were not sufficient to determine his monthly gross income. Doc. 19, 3. In the letter, PHEAA advised Severini that he could "complete a new forbearance request form and submit it along with income documentation that clearly indicate[s] how frequently [he is] paid and the time period for which the income was earned." Doc. 20-2.

Three months passed after the May 7, 2015 denial during which Severini did not make a payment nor reapply for forbearance. Doc. 19, 3. Severini alleges that after many conversations

2

with PHEAA over the phone, he was "instructed to resubmit [his] forbearance request with [his] most recent pay statements." Doc. 6, 8. On August 6, 2015, Severini submitted a second application for forbearance and included more printouts of payment statements from Uber, which PHEAA once again found insufficient. Doc. 19, 3. By letter dated August 13, 2015, PHEAA informed Severini that his forbearance request was denied again on this basis. *Id*. In total, the length of time that Severini's two applications for forbearance were under consideration was 14 days: April 30–May 7, 2015 and August 6–August 13, 2015. *Id.* at 4.

Severini did not thereafter reapply for forbearance and instead worked out a payment plan that started in September and began making his payments on time as agreed. Doc. 6, 8. PHEAA alleges that Severini made no payments between April 2015 and mid-September 2015 and that his account was not brought current until December 2015. Doc. 19, 4. Specifically, in July, October, and November 2015, Severini was marked as being 60–89 days late in repaying his student loan; and 90–119 days late in August and September 2015. Doc. 6, 8. When a loan is delinquent, meaning it is more than 30 days late, PHEAA reports the delinquency to the four major credit reporting agencies—Experian, Equifax, Trans Union, and Innovis. Doc. 19, 4. Accordingly, PHEAA reported the delinquencies in Severini's student loan account for the months of July through November 2015. *Id.*

In November 2016, Severini became aware that American Educational Services ("AES"), which he alleges is a subsidiary of PHEAA,[1] posted negative information to his and his father's credit reports in reference to his student loan account. Doc. 6, 8. Severini sent a letter to PHEAA on November 14, 2016, explaining the circumstances and requesting the negative

---

[1] PHEAA denies that AES is its subsidiary. Doc. 12, 1. In fact, it is an instrumentality of the Commonwealth of Pennsylvania created by statute, which conducts its commercial student loan servicing activities under the business name "American Education Services." *Id.; see* 24 P.A. STAT. ANN. §§ 5101.1–5199.9.

information be removed from their credit reports. *Id.* The request was denied. *Id.* That same day, PHEAA received a dispute notice from Experian and Equifax, wherein Severini challenged the derogatory credit information they reported for July–November 2015. Doc. 19, 6. Severini did not submit supporting documentation in the Experian dispute but made the following statement: "I was advised by the creditor that while I applied for a forbearance[,] payments would not be due. I will send proof of these applications." *Id.*

The Equifax dispute included a similar statement and also copies of Severini's April and August 2015 forbearance requests. Doc. 19, 7. On November 16, 2016, PHEAA received a dispute notice from Trans Union making a similar statement and including the April and August 2015 forbearance requests. *Id.* at 8. On November 21, 2016, PHEAA received a second dispute notice from Trans Union advising that Severini challenged the information provided by PHEAA. *Id.* at 9.

As a furnisher of information under the FCRA, PHEAA is required to investigate disputes regarding the accuracy of any information it provides to the credit reporting agencies. *Id.* at 4. Part of PHEAA's investigation involved reviewing internal records, including records of telephone communications between Severini and PHEAA personnel, regarding the matters raised in the disputes. *Id.* at 6. PHEAA alleges that its records of communications do not corroborate Severini's allegation that PHEAA advised him he need not make payments on his account while his forbearance application was pending. *Id.* In fact, PHEAA alleges their policy is the exact opposite in that a pending forbearance application does not relieve the borrower of his or her payment obligation. *Id.* This policy is expressly set forth in the forbearance application forms that Severini submitted to PHEAA. *Id.* at 5–6; Doc. 20-1 ("You must continue making your regular monthly payments until the Forbearance has been approved.").

In early December 2016, PHEAA responded to Experian, Equifax, and Trans Union, stating that the information concerning Severini was accurately reported. *Id.* at 6–8.

## II. PROCEDURAL HISTORY

On or about March 7, 2018, Severini commenced this lawsuit in the New York County Civil Court of the State of New York. On March 29, 2018, PHEAA removed the action to this Court. Doc. 1. Severini filed his Complaint on June 1, 2018, the gravamen of which is that he and his father suffered injury to their credit scores when PHEAA inaccurately reported his student loan account as delinquent. Doc. 6. Pursuant to the FCRA, Severini seeks statutory damages, costs of the suit, and expungement of the derogatory information on their credit reports. *Id.*

On August 16, 2018, PHEAA asked Severini to produce all documents that support his contention that a forbearance request provides a grace period during which no payments are due until a decision is made, and all documents reflecting the damages he claims to have suffered. Doc. 20-7. However, Severini did not produce documents responsive to the requests. Doc. 19, 10. PHEAA also served Severini with two interrogatories asking him for the same information, i.e., to state the basis for his contention that a forbearance request provides a grace period, and to identify all damages he claimed to have suffered. Doc. 20-8.

In response to the first interrogatory, Severini stated that it was "communicated to [him] on multiple occasions by representatives of PHEAA over the telephone" that he need not make payments while his forbearance application was pending because "no payments are due while forbearances are being considered." *Id.* When pressed for further detail about these calls, such as who participated in the conversations and when they occurred, Severini merely stated that he "made all the communications" and then requested that PHEAA furnish him with records of the

communications. *Id.* at 20-9. PHEAA provided him with the notes its representatives took of the calls, but none indicate that they told Severini his repayment obligation was suspended on account of his pending forbearance applications. *Id.* at 20-2.

In response to the second interrogatory, which asked about damages, Severini stated that PHEAA's actions "drastically affected the credit reports" of himself and his father. *Id.* When asked to describe and quantify the damages, Severini stated "I already provided this information in previous paperwork." *Id.* PHEAA filed a motion for summary judgment on March 26, 2019 arguing, *inter alia*, that there is no evidence PHEAA violated the FCRA and that Severini's claims fail as a matter of law because he did not establish his entitlement to damages. Doc. 18. PHEAA further corroborated its statements with a sworn affidavit from Leslie Harris, a Risk, Policy, and Compliance Coordinator that works at PHEAA, who personally reviewed PHEAA's records regarding Severini's loan account. Doc. 20-1.

## III. LEGAL STANDARD

### A. General Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the litigation under the governing law." *Id.* (quoting *Miner v. Clinton County N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

Nonetheless, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).

### B. Special Solicitude for *Pro se* Litigants

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988)). *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621 (SS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir.2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Whitley v Albers*, 475 U.S. 312, 319 (1986)). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### IV. DISCUSSION

This lawsuit concerns PHEAA's reporting of Severini's student loan payment history to credit reporting agencies. Doc. 21, 1. Severini challenges the accuracy of several entries indicating non-payment. *Id.* He does not dispute his non-payment, but rather alleges that his account was not delinquent because PHEAA told him he had no obligation to pay while his application for a forbearance was being processed. *Id.* The credit reporting agencies submitted the

disputes to PHEAA who was statutorily mandated to investigate the accuracy of its reports. *Id.* Severini brings a claim under § 1681s-2(b) of the FCRA alleging that PHEAA did not conduct a reasonable investigation into his credit disputes. *Id.* PHEAA alleges that it is entitled to summary judgment because Severini has failed to show that PHEAA's investigation of his credit disputes was unreasonable or that he is entitled to damages. *Id.* at 1–2.

### A. Evidence of FCRA Violations

The FCRA "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681(b)). The FCRA prohibits the submission of any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate. *See* 15 U.S.C. § 1681s-2(a)(1)(A). However, there is no private right of action against a data furnisher merely for reporting information to a credit reporting agency, even if that information is inaccurate. *Eiland v. United States Dep't of Educ.*, 2011 U.S. Dist. LEXIS 741, at *8–9 (S.D.N.Y. Jan. 4, 2011) (holding "claim under the FCRA is also barred because that statute does not provide a private right of action against furnishers of inaccurate information to consumer reporting agencies.").

Under the FCRA, a data furnisher is liable for failing to reasonably respond to a formal notification from a credit reporting agency of a consumer dispute. 15 U.S.C. § 1681s-2(b). When a consumer disputes information contained in his credit report to a credit reporting agency, the FCRA requires the agency to promptly notify the entity that supplied the disputed information. *Id.* at § 1681i-(a)(2). The data furnisher must then respond by conducting an investigation with respect to the disputed information; reviewing all relevant information provided by the

9

credit reporting agency; reporting the results of the investigation to the credit reporting agency; and if incomplete or inaccurate information is found, then reporting that to all credit reporting agencies and promptly modifying, deleting, or blocking that information. *Id.* at § 1681s-2(b)(1); *see also Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 304–05 (E.D.N.Y. 2014) ("[U]pon proper notice, furnishers of information must investigate disputes in accordance with the [FCRA] and attendant regulations.").

Given these directives, a data furnisher's liability under the FCRA turns on whether it conducted a "reasonable investigation" in response to a dispute notice to determine whether the disputed information can be verified. *See Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 n.11 (S.D.N.Y. 2010) ("While the FCRA does not state with specificity the type of investigation required, courts have required a 'reasonable investigation' to determine whether disputed information can be verified.") (citation omitted). The reasonableness of an investigation depends upon the nature and scope of the consumer's dispute. *Id.* at *6 (examining reasonableness of furnisher of information's investigation based upon "what it was told by the credit bureau"); *see also Jenkins v. LVNV Funding, LLC*, No. 14CV5682SJFAKT, 2017 WL 1323800, at *11 (E.D.N.Y. Feb. 28, 2017) ("[T]he central inquiry when assessing a consumer's claim under § 1681s-2(b) is whether the furnisher's procedures were reasonable in light of what is learned about the nature of the dispute from the description in the [credit reporting agency's] notice of dispute") (citation omitted).

When PHEAA received notice of Severini's disputes from the credit reporting agencies, the evidence shows they reviewed the disputes, the supporting materials Severini provided to the credit reporting agencies, and PHEAA's internal records of his account. Doc. 21, 14. PHEAA confirmed that their credit reporting accurately reflected Severini's history of non-payment from

July to November 2015. *Id.* PHEAA found no files, including telephone records, that indicated PHEAA told Severini that contrary to its express policy he need not make payments on his loan while his forbearance applications were under consideration. *Id.* Severini himself proffered multiple copies of his signed forbearance applications to the credit reporting agencies which contained explicit language that he had to continue making his monthly payments until the forbearance was approved. *Id.* at 2.

Moreover, even assuming *arguendo* that PHEAA told Severini he did not need to make his monthly payments while his applications were pending, PHEAA's credit reporting would still be accurate. *Id.* at 15. Severini's applications were pending for a total of only 14 days: April 20–May 7, 2015 and August 6–August 13, 2015. *Id.* Even if there was no need for him to make a payment during these two, seven-day grace periods, that would have no bearing on the months when he made no payment and upon which PHEAA relied on in its credit reporting. *Id.* Severini himself notes that after PHEAA denied his second forbearance application on August 13, 2015, he worked out a payment plan with them to continue paying his loan. Doc. 6, 8.

In sum, Severini has not proffered any evidence to support his claim that he was told that no payments were due while his forbearance applications were pending. In light of the lack of evidence, no reasonable factfinder could conclude that PHEAA's investigation in response to Severini's credit dispute was objectively unreasonable. Doc. 21, 15.

### B. Evidence of Entitlement to Damages

Even if Severini successfully showed that PHEAA's investigation was unreasonable, his claim would still fail because he has not established any entitlement to damages. To succeed on a FCRA claim, a plaintiff must prove his entitlement to damages under either a negligence or

willfulness theory.  *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995); *accord Munroe v. Specialized Loan Servcing* [*sic*]*, LLC*, No. 14 CV 1883(MKB)(LB), 2016 WL 5339364, at *3 (E.D.N.Y. Jan. 21, 2016), *report and recommendation adopted sub nom. Munroe v. Specialized Loan Servicing LLC*, No. 14CV1883MKBLB, 2016 WL 1248818 (E.D.N.Y. Mar. 28, 2016).  ("A plaintiff who commences an action pursuant to Section 1681 s-2(b) may recover 'any actual damages' caused by negligent violations and both actual and punitive damages for willful noncompliance.").  Under a negligent noncompliance theory, a plaintiff must establish actual damages attributable to the defendant's unreasonable investigation.  *See Okocha*, 2010 U.S. Dist. LEXIS 132152, at *17.  Under a willful noncompliance theory, the plaintiff need not show actual damages and is entitled to statutory and punitive damages.  *Id.*; *see* 15 U.S.C. §§ 1681n-(a)(1)–(2).  Here, Severini has not shown he is entitled to damages under either theory.

   1. *Negligent Noncompliance*

In a claim for negligent violation, summary judgment is appropriate if no reasonable fact-finder could find that the plaintiff is entitled to damages under the FCRA.  *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460(AJN), 2018 WL 1583289, at *9 (S.D.N.Y. Mar. 27, 2018), *appeal dismissed sub nom. Frederick v. Capital One Bank (USA) NA*, No. 18-2503, 2019 WL 4011476 (2d Cir. Feb. 27, 2019).  To recover actual damages, a plaintiff must establish a "causal relation between the violation of the statute and the loss of credit, or some other harm," and provide evidence beyond his own testimony that such an injury occurred.  *Burns v. Bank of America*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008).  A plaintiff must show that the harm he suffered was traceable to the inaccurate FCRA-violating information, not just that the report contained that information.  *Id.*

Here, Severini has not presented evidence of actual damages. Doc. 6, 8. In the Complaint, Severini merely states that "the result of PHEAA's actions drastically affected the credit reports of both myself and my father." *Id.*; *see Clements v. Trans Union, LLC*, No. 3:17-CV-00237, 2018 WL 4519196, at *9 (S.D. Tex. Aug. 29, 2018), *report and recommendation adopted*, No. 3:17-CV-00237, 2018 WL 4502255 (S.D. Tex. Sept. 20, 2018) (holding "a lower credit score, without more, does not constitute ["actual damages"] for purposes of the FCRA.") (citation omitted); *accord Young v. Harbor Mortor* [*sic*] *Works, Inc.*, No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009) (holding plaintiff had "not alleged any actual damages that he suffered as a consumer flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit.") (collecting cases).

Severini has failed to plead sufficient facts to allege actual injury. *See Caltabiano v. BSB Bank & Tr. Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) (holding in FCRA claims, plaintiff holds burden of demonstrating actual damage with evidence) (citing *Casella*, 56 F.3d at 473). Severini did not produce evidence during discovery that indicates he ever applied for credit, was turned down for credit, that any lender ever relied on the allegedly inaccurate information, or that the information was a substantial factor in a lender's denial of credit to Severini. Doc. 21, 17. Thus, Severini has failed to plead actual damages.

2. *Willful Noncompliance*

To establish a willful violation of the FCRA, the plaintiff must show that a defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Northrop v. Hoffman of Simsbury, Inc.*, 12 F. App'x 44, 50 (2d Cir. 2001) (citation omitted). If a defendant intentionally misled consumers or

concealed information from them, then willfulness is established.  *George v. Equifax Mortg. Servs.*, 2010 U.S. Dist. LEXIS 106235, at *7 (E.D.N.Y. Oct. 5, 2010); *see also Burns*, 655 F. Supp. 2d at 252 ("[T]o survive summary judgment on a willful non-compliance claim, a plaintiff must set forth affirmative evidence demonstrating conscious disregard or deliberate and purposeful actions.") (citation omitted).

Severini sets forth no evidence that PHEAA's investigations pursuant to the FCRA involved willful misrepresentations or concealment.  Doc. 21, 17.  The crux of his argument is not that he made the payments, but rather that his non-payment was permissible as he relied on PHEAA's advice that he did not need to pay while his application was pending.  Doc. 25.  The summary judgment record includes notes taken by PHEAA representatives of telephone calls with Severini made between June 8, 2015 and November 4, 2016.  Doc. 20-2.  PHEAA and Severini communicated about the requirements for the forbearance applications and the credit reporting of his delinquent payments.  *Id.*

The record for the last call, on November 4, 2015, explicitly shows that Severini told PHEAA "he was told that his forbearance would take care of the payments *once* it was received and processed." *Id.*  This corroborates the instruction on the forbearance applications which clearly states that Severini would "receive written notice of the approval or denial of th[e] request, *after* it ha[d] been processed."  Doc. 20-6.  Both of Severini's applications were denied.  Docs. 20-2, 20-4.  Also, the two applications were only pending for a total of 14 days; meanwhile, Severini failed to make his loan payments for several months when no forbearance request was pending.  Doc. 26, 2.  Thus, the record contradicts Severini's allegation that no payments were due *until* a decision was made on his forbearance application.  Doc. 6, 8.

Finally, Severini has provided no evidence showing that PHEAA's investigation was in any way improper or unreasonable. *Id.* There is nothing in the record that suggests PHEAA did not comply with the FCRA in its investigation. *Id.* While *pro se* litigants are awarded special solicitude when defending against summary judgment motions, evidence that is "colorable, conclusory, speculative or not significantly probative" is insufficient to satisfy the summary judgment standard. *Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999). Accordingly, Severini has not proven statutory or punitive damages. In sum, Severini has not demonstrated any disputes of material fact and the case must be dismissed.

## V. CONCLUSION

For the reasons set forth above, the motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 18, mail a copy of the motion to Severini, and close the case.

It is SO ORDERED.

Dated: March 25, 2020
        New York, New York

                                                                             Edgardo Ramos, U.S.D.J.